FILED

UNITED STATES DISTRICT COURT 2012 NOV 14  PM 1: 19
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

GODWIN MITCHELL; and
CATHERINE MITCHELL, his wife

    Plaintiffs,

v.                                                                    Case No.:_____

NEW ENGLAND COMPOUNDING
PHARMACY, INC., d/b/a NEW
ENGLAND COMPOUNDING CENTER, a
foreign corporation,

    Defendant.
_____/

**NOTICE OF REMOVAL**

    Defendant New England Compounding Pharmacy, Inc., d/b/a New England
Compounding Center ("NECC"), by and through undersigned counsel and pursuant to 28
U.S.C. §§ 1331, 1332, 1441, and 1446, hereby removes the above-entitled action to this
Court based upon the following supporting grounds.  Defendant, appearing solely for the
purpose of this removal and for no other purpose, and preserving all other defenses available
to it, states as follows:

    1.    On or about October 18, 2012, an action (the "Complaint") was commenced
in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida,
captioned *Godwin Mitchell and Catherine Mitchell, his wife vs. New England Compounding
Pharmacy, Inc. d/b/a New England Compounding Center, a foreign corporation*, No. 2012-
CA-017224-O.

2.     A copy of the Complaint and all other process, pleadings, and orders received by Defendant are attached as Exhibit A.

3.     Plaintiffs served Defendant with the Complaint on November 5, 2012. Removal is timely under 28 U.S.C. § 1446(b) as fewer than 30 days have elapsed since the Complaint was filed.

4.     This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1441(a) because the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, is within the district of the United States District Court for the Middle District of Florida.

5.     Removal of this action to this Court is permissible under the provisions of 28 U.S.C. § 1441 because the Court has diversity jurisdiction over the subject matter of all claims, pursuant to 28 U.S.C. § 1332 inasmuch as (1) the suit is between citizens of different states, and (2) the amount in controversy exceeds $75,000, exclusive of costs and interest.

6.     For establishing complete diversity of citizenship, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

7.     New England Compounding Pharmacy, Inc. is a Massachusetts corporation with its principal place of business in Massachusetts.   Consequently, New England Compounding Pharmacy, Inc. is a citizen of Massachusetts.

8.     Plaintiffs are residents of the state of Florida, (Compl. ¶¶ 2-3), and, therefore, are citizens of Florida. *See State Farm Mut. Auto. Ins. Co. v. Teddy Ray Dyer, et al.*, 19 F.3d 514, 520 (10th Cir. 1994) (place of residence is prima facie the domicile); *see also Walden v.*

*Broce Constr. Co.*, 357 F.2d 242, 245 (10th Cir. 1966) (citing *Stine v. Moore*, 213 F.2d 446 (5th Cir. 1954) ("With respect to the diversity jurisdiction of the federal courts, citizenship has the same meaning as domicile. . . . Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile."). The Complaint does not allege that either Plaintiff is a resident of Massachusetts, nor does it allege any connection to the state. The allegations in the Complaint do not contradict Defendant's belief and, therefore, the citizenship of Plaintiffs has been established sufficiently for purposes of supporting federal jurisdiction. *See, e.g., Wright v. Continental Cas. Co.*, 456 F. Supp. 1075, 1078 (M.D. Fla. 1978) ("Allegations in the defendant's petition for removal, if not contradicted by the allegations of the complaint, are alone sufficient to establish prima facie the existence of federal jurisdiction."). Accordingly, there is total diversity between the Plaintiffs and the Defendant as required by 28 U.S.C § 1332(a).

9.      Pursuant to 28 U.S.C. § 1332(a), the amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. In this case, though Plaintiffs do not allege specific monetary damages, it is apparent from the face of the Complaint that Plaintiffs seek damages in excess of $75,000, exclusive of interest and costs.

10.      Plaintiffs' allegations of injury and requests for relief are similar to others that have been found to satisfy the amount in controversy requirement. Plaintiffs' damages claims include the following: bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, medical expenses, and loss of ability to earn money. (Compl. ¶ 57.) Similarly, in *Gebbia v. Wal-Mart Stores*, the Fifth Circuit

3

found that alleged damages in a slip and fall case for "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement" satisfied the jurisdictional amount. 233 F.3d 880, 881 (5th Cir. 2000); see also *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (finding that damages to property, travel expenses, emergency ambulance trip, six-day hospitalization, pain and suffering, humiliation, and an inability to do housework satisfied the jurisdictional amount); *Bolin v. Smithkline Beecham Corp.*, No. 08-60523-CIV, 2008 WL 3286973, at *3 (S.D. Fla. Aug. 7, 2008) (holding that damage allegations for "pecuniary loss, loss of consortium, general and medical damages and related expenses, and punitive damages" met Defendants' burden to show that the amount in controversy was greater than $75,000). Here, it is clear from the face of the Complaint that Plaintiffs allege damages in excess of $75,000, satisfying the amount-in-controversy requirement of 28 U.S.C. § 1332.

11.     As stated by the Eleventh Circuit Court of Appeals, "[w]hen a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate. Otherwise, a defendant could wrongly be denied the removal to which it is entitled." *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010).

12.     Removal of this action to this Court is also permissible under the provisions of 28 U.S.C. § 1441 in that it is a civil action arising under the laws of the United States.

13. The original jurisdiction of this Court is invoked under 28 U.S.C. § 1331 in that the instant matter presents a central and substantial federal question. A question of federal law that is "substantial" or important enough warrants "the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). Whether an issue is adequately substantial does not necessarily depend on the existence of a federal cause of action; an issue may be sufficiently substantial if it implicates an important federal interest. *Id.* An important interest is presented when a state claim necessarily involves the interpretation of federal law. *Id.* The instant matter presents such a question.

14. As alleged in the Complaint, NECC was a compounding pharmacy in the Commonwealth of Massachusetts. (Compl. ¶¶ 6, 9–10, 19–20.) Plaintiffs in this action, as well as in similar actions in other federal and state courts, have also alleged that NECC improperly operated as a pharmaceutical manufacturer. (Compl. ¶¶ 4, 9, 21–43.) These competing allegations turn on the interpretation of conflicting federal and state laws and regulations concerning the types of activities in which compounding pharmacists may engage. This distinction is critical for the determination of Plaintiffs' state law claims.

15. Federal courts are in conflict over the issue. The United States Food and Drug Administration ("FDA") is authorized to enforce the federal Food, Drug, and Cosmetic Act ("FDCA"), thereby regulating the manufacture and sale of pharmaceuticals and certain other products. 21 U.S.C. § 301, *et seq.* In 1997, the FDCA was amended to incorporate prohibitions on certain activities traditionally engaged in by compounding pharmacies. Some of these provisions, contained in § 503A, were invalidated by the Supreme Court in

*Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002). Other provisions within § 503A, however, had not been appealed and were thus not addressed by the Court. *Thompson, 535 U.S.* at 360. Consequently, the Court left unresolved the validity of these remaining provisions within § 503A. A split among the Circuit Courts of Appeal now exists over the validity of the remaining provisions. *See W. States Med. Ctr. v. Shalala*, 238 F.3d 1090 (9th Cir. 2001) (Section 503A invalidated in its entirety); *see also Med. Ctr. Pharm. v. Mukasey*, 536 F.3d 383 (5th Cir. 2008) (other provisions within § 503A remain valid). The issues raised in these cases directly implicate how the law distinguishes pharmaceutical compounding from pharmaceutical manufacturing.

      16.    FDA has taken the position that compounding pharmacists are in fact manufacturing "new drugs":

> FDA's position is that the Federal Food, Drug, and Cosmetic Act (FDCA) establishes agency jurisdiction over "new drugs," including compounded drugs. FDA's view is that compounded drugs are "new drugs" within the meaning of 21 U.S.C. § 321(p), because they are not "generally recognized, among experts . . . as safe and effective" for their labeled uses. There is substantial judicial authority supporting FDA's position that compounded drugs are not exempt from the new drug definition.
>
>           *    *    *
>
> FDA maintains that, because they are "new drugs" under the FDCA, compounded drugs may not be introduced into interstate commerce without FDA approval.
>
>           *    *    *
>
> FDA regards traditional compounding as the extemporaneous combining, mixing, or altering of ingredients by a pharmacist in response to a physician's prescription to create a medication tailored to the specialized needs of an individual patient. *See*

> *Thompson v. Western States Medical Center*, 535 U.S. 357,
> 360-61 (2002). Traditional compounding typically is used to
> prepare medications that are not available commercially, such
> as a drug for a patient who is allergic to an ingredient in a
> mass-produced product drug, or diluted dosages for children.

Bellevue Pharmacy Solutions Warning Letter 1/14/2008, *available at*

http://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformation/PharmacyCompound

ing/ucm155169.htm (last visited Nov. 1, 2012) ("Warning Letter").

     17.    FDA's definitions and position are in apparent conflict with other provisions

of state and federal law that permit state oversight of compounding pharmacies. Recognizing

this conflict, and despite the uncertainty over § 503A, FDA nonetheless adopted § 503A's

definitions in theory, if not in practice:

> Through the exercise of enforcement discretion, FDA
> historically has not taken enforcement actions against
> pharmacies engaged in traditional pharmacy compounding.
> Rather, FDA has directed its enforcement resources against
> establishments whose activities raise the kinds of concerns
> normally associated with a drug manufacturer and whose
> compounding practices result in significant violations of the
> new drug, adulteration, or misbranding provisions of the
> FDCA.
>
> FDA's current enforcement policy with respect to pharmacy
> compounding of human drugs is articulated in Compliance
> Policy Guide (CPG), section 460.200 ["Pharmacy
> Compounding"], issued by FDA on May 29, 2002 (*see Notice
> of Availability*, 67 Fed. Reg. 39,409 (June 7, 2002)). The CPG
> identifies factors that the Agency considers in deciding whether
> to initiate enforcement action with respect to compounding.
> <u>These factors help differentiate the traditional practice of
> pharmacy compounding from the manufacture of unapproved
> new drugs</u>. They further address compounding practices that
> result in significant violations of the new drug, adulteration, or
> misbranding provisions of the FDCA. As stated in the CPG,
> "[t]he . . . list of factors is not intended to be exhaustive."

*See* Warning Letter (emphasis supplied).

18.     The factors listed in the referenced CPG are nearly identical to those contained in § 503A. FDA has thus apparently adopted § 503A, conflicting with one or another of the courts that have spoken on the issue.

19.     Various states have themselves enacted differing and in some cases conflicting regulations on the practices of pharmacies. Permitted practices in some states may be considered impermissible manufacturing by FDA and other states. Federal standards, if applicable, will preempt state duties where it is impossible for a private party to comply with both state and federal requirements. *Pliva, Inc. v. Mensing*, 564 U.S. ___, 131 S. Ct. 2567 (2011). While NECC maintains that its compounding practices conformed to all applicable standards for compounding pharmacies, a singular and clear interpretation of the relevant federal authority is necessary to properly assess the applicability and interplay of FDA's rules with state regulatory authority.

20.     FDA's actions in this matter place this conflict in stark relief. FDA engages in enhanced inspections in response to suspected violations of FDCA provisions, such as in cases of suspected adulteration or misbranding. An enhanced inspection of a compounding pharmacy, including collecting and retaining the pharmacy's records, will be conducted by FDA if it believes the facility does not qualify as a compounding pharmacy. *Med. Ctr. Pharmacy v. Gonzales*, 451 F. Supp. 2d 854, 866 (W.D. Tex. 2006) (overturned on other grounds). In collecting NECC's records, FDA has signaled its interpretation of the activities and circumstances alleged in these cases to have exceeded compounding pharmacy exemptions, thus constituting unlawful manufacturing and warranting federal enforcement action. *See* FDA 483 Inspection Report, issued 10/26/12, *available at*

http://www.fda.gov/downloads/AboutFDA/CentersOffices/OfficeofGlobalRegulatoryOperati onsandPolicy/ORA/ORAElectronicReadingRoom/UCM325980.pdf (last visited Nov. 1, 2012).

21.     Only the experience and authority of the federal courts, acting in a coordinated manner, can provide the clarity and consistency necessary to properly and equitably adjudicate these vexing legal issues.   While the circumstances presented are unique, the issues raised are not uncommon and must be decided.   Indeed, the Judicial Panel on Multidistrict Litigation ("JPML") is already considering an application to centralize and transfer all matters arising from these circumstances to a single District Court.   (NECC Notice of Appearance in MDL 2419, Exhibit B).   It is anticipated that JPML will rule on the application to establish MDL 2419 within the next two to four months, likely soon after the hearing scheduled to be held in Orlando, Florida on January 31, 2013.   Defendant anticipates that the application will be granted and this matter will be transferred to an assigned District Court for further pretrial proceedings.

22.     Accordingly, this Court has jurisdiction over this civil action based upon 28 U.S.C. §§ 1331 and 1332.

23.     In accordance with 28 U.S.C. § 1446(d), written notice of the filing of this removal notice will be given to Plaintiffs and will be filed with the Clerk of Courts for the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.

WHEREFORE, Defendant hereby removes the action now pending against it in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, to the United States District Court for the Middle District of Florida.

Dated: November 13, 2012.                    Respectfully submitted,


Charles D. Bavol (Trial Counsel)
Bar Number 776701
Melissa D. Krepps
Bar Number 595551
Attorneys for Defendant
New England Compounding
Pharmacy, Inc.
The Bleakley Bavol Law Firm
15170 N. Florida Avenue
Tampa, Florida 33613
Telephone: 813.221.3759
Facsimile: 813.221.3198
cbavol@bleakleybavol.com
mkrepps@bleakleybavol.com

## CERTIFICATE OF SERVICE

I hereby certify that, on November 13, 2012 the foregoing document was served on all counsel of record identified on the attached Service List via U.S. Mail.

_____
Attorney

## SERVICE LIST

- Christopher M. Chestnut, Esquire
  Evan J. Small, Esquire
  The Chestnut Firm
  5080 W Newberry Rd., Suite 2A
  Gainesville, FL  32607
  Attorneys for Plaintiffs